(38 Misc. Rep. 674.)

## LEEDS v. WARD et al.

(Supreme Court, Special Term, New York County. September, 1902.)

**1. ATTORNEYS—SPECIAL PARTNERSHIP—EVIDENCE.**
　　Evidence examined, and *held* sufficient to show a special partnership between plaintiff, an attorney, and defendants, attorneys, in regard to the prosecution of certain claims against the United States in behalf of merchants transacting business in the island of Porto Rico, arising out of customs duties paid.

Action by Charles C. Leeds against Henry M. Ward and others. Motion for an injunction granted.

Latson & Bonynge, for plaintiff.
Henry M. Ward, in pro. per.

GREENBAUM, J. The plaintiff's right to injunctive relief must rest upon the existence of a special partnership between the plaintiff and the defendants Ward and Carlisle. Has the plaintiff established such a partnership by a fair preponderance of evidence? It is conceded that the parties were jointly interested in the prosecution of certain claims against the United States of America in behalf of divers merchants transacting business in the island of Porto Rico, arising out of the custom duties paid and to be paid by them. These claims had been represented by one Daniels, who held powers of attorney executed by the various claimants, and were known by the parties as the "Daniels powers." The difference between the parties arises out of the situation that was created after the death of Mr. Daniels. It appears that one Luchetti, a resident of Porto Rico, who had been largely interested in securing the Daniels powers, wrote to the plaintiff under date of November 2, 1900, after Mr. Daniels' death, suggesting the plaintiff write him (Luchetti) a letter to be shown to such merchants whose claims had been secured, but who were slow in forwarding their vouchers, with a view of urging them to forward the desired documents, and to be further used for the purpose of inducing other merchants to turn over their claims for prosecution. The plaintiff prepared a letter as suggested on November 14th, and forwarded it to Luchetti, signed by the defendants Messrs. Carlisle and Ward and the plaintiff. This letter contains specific reference to the advisability of other merchants sending in their claims, and, among other things, was obviously designed to secure additional claims. At about the time of the writing of this letter, the plaintiff conferred with Messrs. Carlisle and Ward separately as to the importance of nominating some person acceptable to Mr. Luchetti, to whom the new powers of attorney might be executed in order to secure Mr. Luchetti's active assistance in procuring new claims; and to that end the plaintiff suggested the name of the de-

fendant Hernand Behn, a resident of New York City, a favorite nephew of Luchetti, and with whom the plaintiff was acquainted. The affidavits submitted upon this motion show with reasonable certainty that plaintiff's suggestion was favorably received; that immediately thereafter the plaintiff called upon the defendant Behn, procured his approval of the plan, and arranged for an interview between the defendants Ward and Behn, at which, the plaintiff being present, it was agreed that the defendants Behn and Ward and the plaintiff were to write simultaneously to Luchetti advocating the suggestions made by the plaintiff. These letters were written, but neither of the defendants Behn or Ward produces a copy of his letter. A copy of the letter written by the plaintiff to Luchetti pursuant to the understanding referred to is important, as showing the state of mind of the various parties respecting the matters now in controversy. The following extract from the plaintiff's letter is instructive:

"In company with your nephew I had an interview with Mr. Ward. I had suggested to Mr. Carlisle and Mr. Ward that, in any powers of attorney to be hereafter obtained, Mr. Behn should be named as the attorney, which was received with satisfaction. Mr. Behn expects to write you by this mail, and you will also receive a letter from Mr. Ward and a lot of printed blanks. I trust that the merchants of San Juan who have held back, and the merchants at Mayaguez, Arecibo, and other ports, will now come forward."

Under date of November 25th, Mr. Luchetti wrote plaintiff, acknowledging receipt of the joint letter of Messrs. Carlisle, Leeds, and Ward, and also acknowledging receipt of plaintiff's separate letter above quoted, and saying further, "The choice of my nephew Hernand Behn for the new attorney is highly valued for me." This letter was shown to defendant Ward, and, under date of December 16th, Luchetti again wrote to plaintiff, informing him that he had secured a number of new powers of attorney, "which I have sent to my nephew as attorney." This letter further states that "he [nephew] will hand them to you, with a copy of my views on the matters before the court, which we will translate and communicate. For the new powers and some more details I refer you to my nephew." After receipt of this letter, Behn called upon plaintiff and translated portions of his uncle's letter.

It appears that the defendant Ward, who seemed to have had the practical control of the cases, entered into an agreement with Behn on the 18th day of January, 1901, unbeknown to the plaintiff and the defendant Carlisle, in which Behn agreed, in consideration of the services rendered and to be rendered by "the said Henry M. Ward and his associate counsel," to pay him (Ward) "a sum equal to two-thirds of whatever sums of money may be received by the said Hernand Behn under and by virtue of said powers of attorney now executed or hereafter to be executed." A recital in the agreement reads as follows: "And whereas the said Henry M. Ward is authorized to represent Mr. John G. Carlisle and other associate counsel for the purposes of this agreement." Although the language of this agreement would not be binding upon the plaintiff, yet, so far as the defendants are concerned, it is evident that, if the reference to "other associate counsel" was intended to apply to the plaintiff, a clear case

of special partnership has been established. The defendant Ward explains the words "other associate counsel" as applicable to certain counsel whom he names, but it is not satisfactorily shown precisely what these counsel did, or what their relation to the claims represented by the so-called "Behn powers" were. On the other hand, all the circumstances leading up to the procuring of the Behn powers point with reasonable certainty to the conclusion that the plaintiff was jointly interested with the defendants Ward and Carlisle in the claims involved in the Behn powers. This conclusion is fortified by the fact that a Mr. Lightfoot, who was in correspondence with the defendant Ward concerning the creation of a fund for the compensation of Mr. Luchetti after the death of Daniels, had written a letter to Mr. Ward in which he specifically referred to the fact that the plaintiff· and the defendants Carlisle and Ward were jointly and solely interested in the Behn powers; and, although this letter was answered by Ward, no denial of this explicit statement of the plaintiff's interest was made by Ward. Mr. Lightfoot also avers in his affidavit that he again referred to the joint interest of the parties in the Behn powers in a conversation which he had with Mr. Ward, and that no denial of this fact was then made by Mr. Ward. When a breach occurred between Ward and the plaintiff, due to the fact that certain claims controlled by Mr. Lightfoot were not placed in Ward's hands, Mr. Ward writes to Mr. Leeds, the plaintiff, that, in view of the fact that these claims (in which Mr. Ward assumed Mr. Leeds had an equal interest with Mr. Lightfoot) were placed in the hands of other counsel:

"I beg to inform you that I am of opinion that you have forfeited whatever possible claims you might have had for compensation out of the fees which I am to receive for the claims put in my hands by Mr. Luchetti and his nephew Hernand Behn."

Here is some recognition of the plaintiff's claim, made by the adverse party, in guarded language, to be sure, but nevertheless of significance, in connection with the antecedent facts and the circumstances which provoked the writing of the letter. The denials of an agreement with the plaintiff contained in the opposing affidavit are rather in the nature of denials of legal conclusions as to the existence of a partnership agreement, than of essential facts which would tend to negative the idea of such an agreement. I am of the opinion that the plaintiff has sustained the burden of proof upon the question of a special partnership in the Behn powers, and I have therefore concluded to continue the injunction; and, unless the parties agree as to the disposition of the funds pendente lite, a receiver will be appointed.

Ordered accordingly.